IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

DUDLEY FLYING SERVICE, INC.                                          PLAINTIFF

v.                              Case No. 3:13-cv-00156-KGB

AG AIR MAINTENANCE SERVICES, INC.                                   DEFENDANT

## ORDER

Plaintiff Dudley Flying Service, Inc. ("Dudley"), brings this action against defendant Ag Air Maintenance Services, Inc. ("Ag Air"), alleging claims of negligence; violations of the Arkansas Deceptive Trade Practices Act ("ADTPA"), Ark. Code Ann. § 4-88-107; and a claim for punitive damages (Dkt. No. 26).  Trial is set for the week of April 20, 2015.

The Court held a pretrial hearing in this matter on Monday, April 13, 2015.  Counsel for Dudley and counsel for Ag Air were present.  The Court heard argument from counsel on Dudley's amended motion *in limine* (Dkt. No. 50); Dudley's motion for reconsideration (Dkt. No. 56); Dudley's objections to Ag Air's pretrial disclosures (Dkt. No. 51); and Ag Air's objections to Dudley's deposition designations, along with Dudley's objections to Ag Air's deposition cross-designations (Dkt. Nos. 46, 47, 48, 49, 59, 60, 61, 62, 63, 64, 65).  Counsel raised additional issues for this Court's consideration at the pretrial hearing.  For reasons stated on the record and in this Order, the Court rules as follows.

### I.      Amended Motion *In Limine*

The Court grants in part, denies in part, and takes under advisement in part Dudley's amended motion *in limine* (Dkt. No. 50).  As to those matters about which the Court grants an *in limine* motion, all parties, their counsel, and witnesses are directed to refrain from making any mention through interrogation, *voir dire* examination, opening statement, arguments or

otherwise, either directly or indirectly, concerning the matters about which the Court grants an *in limine* motion, without first approaching the bench and obtaining a ruling from the Court outside the presence of all prospective jurors and the jurors ultimately selected to try this case.  Further, all counsel are required to communicate this Court's rulings to their clients and witnesses who may be called to testify in this matter.

1.       Dudley moves *in limine* to exclude any testimony, evidence, and argument that the manufacturer of the engine at issue in this litigation, Pratt and Whitney Canada ("PWC"), is at fault.  As an initial matter, the Court rejects Dudley's argument that, as a matter of law, the agreement Bruce Benthien signed with PWC for a Limited Cost Overhaul of Dudley's engine does not constitute a settlement.  The case cited by Dudley in support of this proposition, *Williams v. Davis*, 659 S.W.2d 514, 515 (Ark. Ct. App. 1983), is distinguishable from the case at bar.  In *Williams*, there was no written document memorializing any agreement.  Here, there is a written agreement executed by Mr. Benthien and that agreement includes a release.

Under Arkansas law, settlement agreements are treated as contracts.  *See Williams*, 659 S.W.2d at 515.   "[T]he first rule of interpretation of a contract is to give to the language employed the meaning which the parties intended."  *First Nat'l Bank of Crossett v. Griffin*, 832 S.W.2d 816, 819 (Ark. 1992).   "When contracting parties express their intention in a written instrument in clear and unambiguous language, it is our duty to construe the written agreement according to the plain meaning of the language employed."  *C. & A. Constr. Co. v. Benning Constr. Co*., 509 S.W.2d 302, 303 (Ark. 1974).   Based on the language of the agreement, the Court cannot state, as a matter of law, that the agreement was not intended as a settlement agreement (Dkt. No. 50-1).

The agreement at the top states in bold letters that are underlined, "FOR SETTLEMENT PURPOSES ONLY."  The agreement itself recites in pertinent part:

> For this engine event [August 10, 2010], the Pratt & Whitney Canada Corp. ("P&WC") Investigation Report has determined that the PT Blade fracture was initiated in fatigue at a TSN of 4995 hours.  The cause of the fatigue was found to be related to material embrittlement originating from the presence of thin lead rich layer.  It is important to mention that the source of the contaminant remains unknown and a quality investigation will be made to determine its origin.  Unfortunately, since that no overhaul was perform on this engine, the PT Blade set was not NDT inspected and therefore the opportunity to capture the facture initiation was missed.
>
> However, in the interest of good business relationship and without any acknowledgment of liability on P&WC's part and is not renegotiable in whole or in part after acceptance, P&WC would like to offer Dudley Flying Services a commercial support concession to overhaul the engine S/N RD0028 to a serviceable condition in the same line of what is defined in the terms and conditions stated in the Extended Engine Service Policy (EESP) – Limited Cost Overhaul (LCO).
>
> . . .
>
> The parties agree that this commercial support offer is made in full and final settlement of any and all claims regarding the subject event and that it is made on the express condition that it shall at all times, before and after acceptance, remain confidential between P&WC, Covington, AG Air Maintenance Service and Dudley Flying Services who agree not to disclose it to any third party, without the express prior written approval of the other parties.
>
> . . .
>
> This offer is valid for 15 days and is conditional upon the work being performed during this shop visit at Covington Aircraft or any other P&WC shop where P&WC will apply all the credit discount on new parts.  By signing and returning this offer, Dudley Flying Services, acknowledges having read and understood the offer.

(Dkt. No. 50-1, at 1-3).  Mr. Benthien executed this agreement on behalf of Dudley.

Further, at this point in the proceeding, this Court cannot conclude that PWC is not a potentially liable joint tortfeasor.  Ag Air's expert witness Dr. Arun Kumar offered the following opinion, along with several other opinions, in his report disclosed in this matter:

> The surface of the S/N 26 blade contains a high amount of lead (Pb) which was also present in the fatigue crack origin areas and had smeared all over the fracture surface during the crack propagation process.  This lead is a residue left from the manufacturing process of the blade by Pratt & Whitney that *caused liquid metal embrittlement* cracks that became the fatigue crack origins.  Therefore, blade S/N 26 failed due to a *manufacturing defect*.

(Dkt. No. 37-14).

For these reasons, this Court cannot conclude that the agreement was not intended as a settlement agreement of a potentially liable joint tortfeasor.  The Court determines that this is a circumstance in which the Court may exercise its discretion to admit evidence as to the settlement and the amount of the settlement, depending on the proof at trial.  *See* Howard W. Brill & Christian H. Brill, *Arkansas Law of Damages* § 7.5 (5th ed. 2014) (citing *St. Vincent Infirmary Medical Center v. Shelton*, 425 S.W.3d 761, 769 (Ark. 2013) (Hart, J., dissenting), *superseded by statute*, 2013 Ark. Acts 1116, *as recognized by J-McDaniel Const. Co. v. Dale E. Peters Plumbing Ltd.*, 436 S.W.3d 458 (Ark. 2014); *Ark. Kraft Corp. v. Johnson*, 519 S.W.2d 74 (Ark. 1975)).  In doing so, the Court acknowledges that the general approach is for the settlement not to be introduced into evidence at trial because doing so informs the jury that one defendant, or in this case a potentially liable joint tortfeasor, has admitted liability and might permit the jury to use the amount of the settlement as compensation for the injuries.  Brill, *supra.*  Generally, the preferable approach is for the court to credit the compromise payment upon the final judgment, but that is difficult to do here given the anticipated evidence, the disputed issues of fact regarding proximate cause, and the damages Dudley has represented it seeks.

If Ag Air seeks and is permitted by this Court to inform the jury of both the fact and amount of the settlement, Ag Air does so at its own peril in regard to seeking later a credit or offset from a judgment in favor of Dudley, should the jury render a verdict in Dudley's favor. *See Ark. Kraft Corp.*, 519 S.W.2d at 78-79; *Giem v. Williams*, 222 S.W.2d 800, 804-05 (Ark.

1949).  *See also Sloan v. Motorists Mut. Ins. Co.*, 368 F.3d 853, 855 (8th Cir. 2004) (discussing *Ark. Kraft Corp.* and *Giem*).

Even if the agreement between Dudley, as executed by Mr. Benthien, and PWC is a collateral source, as Dudley suggests, the Arkansas Supreme Court has recognized in the context of personal injury that a collateral source of recovery may be introduced (1) to rebut the plaintiff's testimony that he or she was compelled by financial necessity to return to work prematurely or to forego additional medical;  (2) to show that the plaintiff had attributed his condition to some other cause, such as sickness; (3) to impeach the plaintiff's testimony that he or she had paid his medical expenses himself; (4) to show that the plaintiff had actually continued to work instead of being out of work, as claimed.  *Montgomery Ward & Co. v. Anderson*, 976 S.W.2d 382, 384-85 (Ark. 1998) (citing *Evans v. Wilson*, 650 S.W.2d 569, 570 (Ark. 1983)).  The Court determines the reasoning behind one or more of these exceptions may be applicable here, depending on the proof at trial, thereby making even collateral source evidence admissible.

For these reasons, the Court denies Dudley's motion *in limine*.  The Court will rule on contemporaneous objections to this evidence at trial.

2.      Dudley moves *in limine* to exclude any claim for credit or reduction in damages related to Dudley's purchase of a Limited Cost Overhaul from PWC.  For the reasons set out in regard to Point 1 above, the Court denies Dudley's motion *in limine*.  The Court will rule on contemporaneous objections to this evidence at trial.

3.      To the extent the parties agree, Dudley's motion *in limine* is granted as to this matter.  Dudley seeks to exclude that any portion of the damages sought has been, or will be, paid by any collateral source.

4.     Dudley moves *in limine* to exclude the agreement between Dudley, as executed by Mr. Benthien, and PWC under Federal Rules of Evidence 402 and 403.  For the reasons set out in regard to Point 1 above, the Court denies Dudley's motion *in limine*.  The Court will rule on contemporaneous objections to this evidence at trial.

5.     Dudley moves *in limine* to exclude any opinions in the agreement between Dudley, as executed by Mr. Benthien, and PWC as unsupported opinions which are inadmissible under Federal Rule of Evidence 702.  Ag Air responds by stating it is unclear to what opinions Dudley refers.  The Court denies without prejudice Dudley's motion *in limine*.  The Court will rule on contemporaneous objections to this evidence at trial.

6.     Dudley moves *in limine* to exclude that Mr. Benthien disconnected the "Hobbs" meter, a device that records aircraft flight time, similar to a car's odometer.  The Court takes under advisement Dudley's hearsay objection under Federal Rule of Evidence 801.  The Court overrules Dudley's objections under Federal Rules of Evidence 401 and 403.  To the extent appropriate, Dudley should make contemporaneous objections to this evidence at trial.

7.     Dudley moves *in limine* to exclude any airframe maintenance issues.  Counsel for Ag Air represents that any discussion as to airframe maintenance issues will be limited and will relate to how well and under what circumstances Dudley acted to maintain the aircraft.  The Court denies Dudley's motion *in limine*.  The Court will rule on contemporaneous objections to this evidence at trial.

8.     To the extent the parties are in agreement, the Court grants Dudley's motion *in limine* as to this matter.

9.     To the extent the parties are in agreement, the Court grants Dudley's motion *in limine* as to this matter.

10.    To the extent the parties agree, Dudley's motion *in limine* is granted as to this matter.

11.    To the extent the parties agree, Dudley's motion *in limine* is granted as to this matter.

12.    To the extent the parties agree, Dudley's motion *in limine* is granted as to this matter.

13.    To the extent the parties agree, Dudley's motion *in limine* is granted as to this matter.

14.    To the extent the parties agree, Dudley's motion *in limine* is granted as to this matter.

15.    To the extent the parties agree, Dudley's motion *in limine* is granted as to this matter.

16.    To the extent the parties agree, Dudley's motion *in limine* is granted as to this matter.

17.    To the extent the parties agree, Dudley's motion *in limine* is granted as to this matter.

18.    To the extent the parties agree, Dudley's motion *in limine* is granted as to this matter.

19.    To the extent the parties agree, Dudley's motion *in limine* is granted as to this matter.

20.    To the extent the parties agree, Dudley's motion *in limine* is granted as to this matter.

21.     To the extent the parties agree, Dudley's motion *in limine* is granted as to this matter.

22.     To the extent the parties agree, Dudley's motion *in limine* is granted as to this matter.

23.     To the extent the parties agree, Dudley's motion *in limine* is granted as to this matter.

24.     To the extent the parties agree, Dudley's motion *in limine* is granted as to this matter.

25.     To the extent the parties agree, Dudley's motion *in limine* is granted as to this matter.

26.     To the extent the parties agree, Dudley's motion *in limine* is granted as to this matter.

27.     To the extent the parties agree, Dudley's motion *in limine* is granted as to this matter.

28.     To the extent the parties agree, Dudley's motion *in limine* is granted as to this matter.

29.     To the extent the parties agree, Dudley's motion *in limine* is granted as to this matter.

30.     To the extent the parties agree, Dudley's motion *in limine* is granted as to this matter.

31.     To the extent the parties agree, Dudley's motion *in limine* is granted as to this matter.

32.     To the extent the parties agree, Dudley's motion *in limine* is granted as to this matter.

33.     To the extent the parties agree, Dudley's motion *in limine* is granted as to this matter.

34.     To the extent the parties agree, Dudley's motion *in limine* is granted as to this matter.

35.     To the extent the parties agree, Dudley's motion *in limine* is granted as to this matter.

36.     The Court denies as moot the matters raised in paragraph 36 based on Dudley's withdrawal of its motion as to matters raised in paragraph 36.

37.     Dudley seeks to exclude the opinions of defense expert, Dr. Arun Kumar, contending that these opinions are based on invalid methodology and do not satisfy the requirements of Federal Rule of Civil Procedure 26(a)(2)(B)(I).  For the reasons set out in this Court's Order denying Dudley's *Daubert* challenge to Ag Air's expert, Dr. Kumar, raised in its motion for partial summary judgment (Dkt. No. 54) and for the reasons set out in this Court's separate Order denying Dudley's motion for reconsideration (Dkt. No. 70), the Court denies this motion.

38.     Dudley moves *in limine* to exclude any assertion concerning maintenance that was not performed on the engine that should have been done, other than the subject Power Turbine Blade inspection.  The Court denies Dudley's motion *in limine* under Federal Rules of Evidence 401, 402, and 403.  The Court will rule on contemporaneous objections to this evidence at trial.

39.     Dudley moves *in limine* to exclude evidence that the engine was beyond the manufacturer's recommended time for overhaul and that the engine had not been overhauled before the subject blade failure.   The Court denies Dudley's motion *in limine* under Federal Rules of Evidence 401, 402, and 403.   The Court will rule on contemporaneous objections to this evidence at trial.

40.     Dudley moves *in limine* to exclude evidence that the Power Turbine ("PT") Section of the engine was not sent to Covington Aircraft Engines, Inc., for inspection before the subject blade failure.   The Court denies Dudley's motion *in limine* under Federal Rules of Evidence 401, 402, and 403.   The Court will rule on contemporaneous objections to this evidence at trial.

41.     Dudley moves *in limine* to exclude any evidence of the manufacturer sending Service Bulletins to Dudley or Mr. Benthien concerning the subject Power Turbine Blade Inspection.   The Court denies Dudley's motion *in limine* under Federal Rules of Evidence 401, 402, and 403.   The Court will rule on contemporaneous objections to this evidence at trial.

42.     Dudley moves *in limine* to exclude any evidence that the engine, after repair, is more valuable than it was prior to the failure.   Specifically, Dudley contends that Ag Air has no admissible evidence to support such an opinion because such an opinion would require expert testimony.   Dudley contends such assertions, if offered by Ag Air, are generalized, not related to the specific engine, and do not address any reduction in value because of the damage history.   The Court takes this objection under advisement.   The Court will rule on contemporaneous objections to this evidence at trial.

43.     Dudley moves *in limine* to exclude any expert opinion testimony by Steve Brewer of Ag Air.   Dudley contends that there was no designation by Ag Air that Mr. Brewer was an

expert and there has been no summary disclosure of the subject matter on which he is expected to present evidence under Federal Rule of Civil Procedure 702, 703, or 705, or the facts and opinions to which he is expected to testify as required by Federal Rule of Civil Procedure 26(a)(2)(C).  Because it is not clear what expert opinions Dudley anticipates Mr. Brewer will offer, the Court takes this objection under advisement.  The Court will rule on contemporaneous objections to this evidence at trial.

### II.        Motion For Reconsideration

At the pretrial hearing, the Court took under advisement Dudley's motion for reconsideration (Dkt. No. 56).  Dudley sought reconsideration of the Court's ruling on Dudley's *Daubert* challenge to Ag Air's expert, Dr. Arun Kumar, which Dudley raised in its motion for partial summary judgment (Dkt. No. 54).  The Court denied this motion by separate Order (Dkt. No. 70).

### III.       Objections To Pretrial Disclosures

As to Dudley's objections to Ag Air's pretrial disclosures, the parties may inform the Court prior to trial to the extent there remain objections that are not the subject of the Court's ruling on the motions in *limine*, motion for reconsideration, and matters addressed by this Order.

### IV.       Objections To Deposition Designations

The Court has under advisement Ag Air's objections to Dudley's designations of portions of deposition testimony Dudley intends to present to the jury.  By separate order, the Court will rule on objections made to the introduction of such evidence prior to such evidence being presented to the jury.

V.      **Ability To Call A Retained Defense Expert In Plaintiff's Case-In-Chief**

Dudley identifies as a potential witness Dudley may call in its case-in-chief Ag Air's retained expert James Irvin.  Ag Air objects.  The Court grants Ag Air's objection.  Dudley may not call Mr. Irvin in Dudley's case-in-chief.

Generally, courts are divided as to whether a party can call the opposing party's designated expert as part of its case in chief.  This Court prohibits Dudley from calling Mr. Irvin as part of its case-in-chief and examining him as a hostile witness by leading questions under Federal Rule of Evidence 611(c).  *See Peterson v. Willie*, 81 F.3d 1033, 1037-38 (11th Cir. 1996); *N5 Technologies LLC v. Capital One N.A.*, 93 Fed. R. Evid. Serv. 715 (E.D. Va. 2014) (refusing to permit an opposing party to call a witness designated as an expert but not called at trial).  There has been no showing by Dudley of special circumstances so as to convince this Court to permit Dudley to call Mr. Irvin in its case-in-chief.  *See, e.g., In re Homestore.com, Inc.*, No. CV 01-11115 RSWL CWX, 2011 WL 291176, *2 (C.D. Cal. 2011) (finding that defendants did not show exceptional need to call plaintiff's former expert because the expert did not have a unique field of expertise and because defendant could have designated other experts to testify on the matter); *Rubel v. Eli Lilly and Co.*, 160 F.R.D. 458, 460 (S.D.N.Y. 1995) (same); *but see Guinn v. CRST Van Expedited, Inc.*, No. CIV-09-1198-D, 2011 WL 2414393, *2 (W.D. Okla. 2011) (allowing plaintiff's former expert to testify for the defendant because the defendant could not retain another expert without delaying the trial).

VI.     **Referencing Punitive Damages**

Ag Air moves *in limine* to exclude any testimony, evidence, or argument regarding punitive damages until Dudley introduces sufficient evidence to make a *prima facie* case that would support such an award.  Dudley contends that Ag Air's conduct in maintaining Dudley's

12

aircraft demonstrated conscious disregard for safety and indifference to the consequences of its actions.  As a result, Dudley maintains it is entitled to punitive damages under Arkansas Code Annotated § 16-55-206 because it claims Ag Air knew, or should have known, in the light of surrounding circumstances that its conduct would naturally and probably result in injury or damage and continued that conduct with reckless disregard of the consequences.  This Court determined, in ruling on Dudley's motion for partial summary judgment, that there is a factual dispute as to causation.  For this reason, the Court denied Dudley's motion for partial summary judgment as to punitive damages (Dkt. No. 54, at 15-16).

Now, the Court grants Ag Air's motion *in limine* on referencing punitive damages.  *See City Nat'l Bank of Fort Smith v. Goodwin*, 783 S.W.2d 335, 339 (Ark. 1990) (determining that, where the issue of punitive damages is erroneously submitted to the jury, together with the defendant's financial condition, an award of compensatory damages cannot stand); *KARK-TV v. Simon*, 656 S.W.2d 702, 705 (Ark. 1983) (same).

SO ORDERED this the 17th day of April, 2015.

Kristine G. Baker
United States District Judge